NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Grafton
No. 2014-0513


THE STATE OF NEW HAMPSHIRE

v.

RODRIC R. REINHOLZ

Argued:  October 15, 2015
Opinion Issued:  April 29, 2016


Joseph A. Foster, attorney general (Nicholas Cort, assistant attorney general, on the brief, and Susan P. McGinnis, senior assistant attorney general, orally), for the State.


Thomas Barnard, senior assistant appellate defender, of Concord, on the brief and orally, for the defendant.


BASSETT, J.  The defendant, Rodric R. Reinholz, appeals his convictions, following a jury trial, on two counts of pattern aggravated felonious sexual assault (AFSA), see RSA 632-A:2, III (2007), two counts of AFSA by individual acts, see RSA 632-A:2, I(l) (1996) (amended 2003), and one count of felonious sexual assault (FSA), see RSA 632-A:3, III (1996) (amended 2003).  The defendant argues that the Superior Court (Bornstein, J.) erred when it admitted into evidence an "affidavit" written by the victim.  He also argues that

his convictions on the two pattern AFSA charges must be vacated under the rule of mandatory joinder that we adopted in State v. Locke, 166 N.H. 344 (2014). We affirm.

The jury could have found the following facts. The victim was born in November 1988. Beginning in 1991, the victim and her two brothers visited the defendant at his residence every other weekend. From about 1996 to 2001, the defendant lived at an apartment in Ashland.

At least once during each of the victim's visits with the defendant in Ashland, he sexually abused her. After showing the victim pornography, the defendant would make her touch his penis with her hands and perform fellatio. On one occasion, the defendant performed cunnilingus on her. When the victim turned 13 years old in November 2001, she stopped visiting the defendant and the abuse ceased.

In October 2010, the victim reported the assaults to the police. Thereafter, she filed a petition for a restraining order against the defendant, which was granted by the court.

In June 2011, a grand jury indicted the defendant on two counts of AFSA and three counts of FSA. See RSA 632-A:2, I(l), :3, III. Each indictment alleged that, between July 1996 and November 2001, the defendant engaged in an individual sexual act with the victim, who was under the age of 13 at the time. One AFSA charge alleged that the defendant engaged in cunnilingus (AFSA cunnilingus), while the other alleged that he engaged in fellatio (AFSA fellatio). One of the three FSA counts alleged that the defendant caused the victim to touch his penis with her hand (FSA touching). During trial in January 2012, one of the other FSA charges was dismissed. Because the jury was unable to reach a verdict on the remaining four charges, the trial court declared a mistrial.

Before retrial, in February 2012, a grand jury indicted the defendant on two counts of pattern AFSA. See RSA 632-A:2, III. Both alleged that, between July 1996 and November 2001, the defendant engaged in a pattern of sexual conduct with the victim. One pattern charge alleged that the defendant engaged in a pattern of fellatio with the victim, while the other alleged that he engaged in a pattern of causing the victim to touch his penis with her hands. After the second trial in May 2012 on the remaining charges, the jury acquitted him of one FSA charge, but convicted him on the AFSA cunnilingus, AFSA fellatio, and FSA touching charges, as well as the two pattern AFSA charges. The defendant appealed his convictions, arguing that the trial court erred when it denied his request to allow a videotape of his police interview into the jury room during deliberations. State of New Hampshire v. Rodric R. Reinholz, No. 2012-0605 (N.H. Jan. 17, 2014). Because we agreed with the defendant, we reversed the convictions and remanded. Id.

After his third trial in May 2014, which is the subject of this appeal, the defendant was again convicted on the AFSA cunnilingus, AFSA fellatio, and FSA touching charges, as well as the two pattern AFSA charges. According to the trial court, the "State elected to proceed with sentencing" on only certain charges. Accordingly, the trial court sentenced the defendant on the AFSA cunnilingus charge and the two pattern AFSA charges, but not on either the AFSA fellatio charge or the FSA touching charge. This appeal followed.

The defendant first argues that his convictions on the two pattern AFSA charges must be vacated under the rule of mandatory joinder that we adopted in Locke. Although the State asserted at oral argument that the defendant did not preserve this argument, given that we are affirming the trial court, we will assume, without deciding, that the argument is preserved.

In Locke, decided after the defendant's third trial, we held that "the common law of New Hampshire incorporates the principles set forth in Model Penal Code Section 1.07(2)." Locke, 166 N.H. at 349. Under Locke:

a defendant shall not be subject to separate trials for multiple offenses based on the same conduct or arising from the same criminal episode, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction of a single court.

Id. at 348 (quotation omitted); see Model Penal Code § 1.07(2) (1985). We observe that the rule announced in Locke has been codified in Rule 20(a)(4) of the New Hampshire Rules of Criminal Procedure, which became effective on March 1, 2016.

Here, the parties do not dispute that all of the charges at issue were within the jurisdiction of a single court. Additionally, we assume without deciding that the prosecutor had the requisite knowledge regarding the pattern AFSA charges at the commencement of the defendant's first trial. We, therefore, confine our analysis to whether the two pattern AFSA charges were "based on the same conduct or ar[ose] from the same criminal episode" as the AFSA fellatio and FSA touching charges. Locke, 166 N.H. at 348 (quotation omitted).

As noted above, one pattern AFSA charge alleged that the defendant engaged in a pattern of fellatio with the victim, and the other alleged that he engaged in a pattern of causing the victim to touch his penis with her hand. The defendant asserts that these charges were based upon the same conduct or arose from the same criminal episode as the AFSA fellatio and FSA touching charges. Thus, the defendant asserts, the State was required to bring the two pattern AFSA charges at the time of his first trial, and its failure to do so

3

requires that his convictions on the two pattern AFSA charges be vacated. See State v. Glenn, 167 N.H. 171, 177-78 (2014) (vacating defendant's convictions under mandatory joinder rule). We disagree.

Here, in contrast to the AFSA fellatio and FSA touching charges — which each alleged that the defendant engaged in an individual sexual act — each of the two pattern AFSA charges required the State to prove that the defendant engaged in a series of two or more sexual acts over a period of between two months and five years. See State v. Fortier, 146 N.H. 784, 791 (2001) (stating that the "essential culpable act, the actus reus" of pattern AFSA "is the pattern itself, that is, the occurrence of more than one sexual assault over a period of time"). Because the two pattern AFSA charges spanned the same time period, concerned the same victim, and involved the same types of sexual acts as the AFSA fellatio and FSA touching charges, it is possible that the individual acts of sexual assault alleged in the AFSA fellatio and FSA touching charges each comprised one of the predicate acts necessary to establish the corresponding pattern AFSA charge. However, the opposite could also be true. In other words, it is also possible that the individual acts alleged in the AFSA fellatio and FSA touching charges did not comprise one of the predicate acts necessary to find the corresponding AFSA charge.

Accordingly, because the jury in this case was never instructed otherwise, it is possible that the verdicts on the pattern AFSA charges were based in part upon the individual acts alleged in the AFSA fellatio and FSA touching charges. It is also possible that the verdicts were not so based. See id. (explaining that, in regard to a pattern charge, the "jury must unanimously agree that a defendant engaged in more than one act of sexual assault . . . , but need not agree on the particular acts, provided that they find the requisite number of acts occurred during the statutory time period"). We observe that, had the defendant or the State so requested, either would have been entitled to an instruction informing the jury that it could not use the same alleged act of sexual assault both to comprise a part of the pattern supporting a conviction on a pattern AFSA charge and to support a conviction upon an individual charge based upon that act. See id. at 793. Because the defendant does not argue that the trial court had an obligation to so instruct the jury, sua sponte, this case does not present us with that issue.

Given these circumstances, we cannot conclude, as a matter of law, that the two pattern AFSA charges were based upon the same conduct or arose from the same criminal episode as the AFSA fellatio and FSA touching charges. Thus, we hold that the mandatory joinder rule does not apply, and, therefore, the defendant's convictions on the two pattern AFSA charges need not be vacated.[*]

---

[*] We note that, in its brief, the State cites State v. Collins, 168 N.H. 1 (2015) when discussing the sentence that the defendant received here. Although Collins bears some similarities to this case,

The defendant next argues that the trial court erred when it admitted into evidence an "affidavit" written by the victim. The so-called affidavit was part of the petition for a restraining order that the victim had filed against the defendant, and it alleged that he sexually abused her each time that she visited him when she was between the ages of 7 and 13. The affidavit included allegations that the defendant made the victim watch pornography with him, and included graphic descriptions of various sexual acts that he made her engage in. During the video-recorded interview that the defendant had with a police officer, the officer gave the affidavit to the defendant to read.

Before his third trial, the defendant filed a motion in limine to exclude the affidavit, arguing that it constituted inadmissible hearsay. The Trial Court (MacLeod, J.) denied the motion, explaining that, because the affidavit was "offered by the State to place the defendant's interview [with the police officer] in context and not for the truth of the statements therein," the affidavit was admissible. The trial court also found that the probative value of the affidavit substantially outweighed the danger of unfair prejudice to the defendant.

During trial, the affidavit was admitted into evidence and was, thus, available to the jury during deliberations. However, the trial court twice instructed the jury that the affidavit was being admitted only to provide "context" for the defendant's interview with the police officer and not for the truth of its allegations. The video recording of the defendant's interview with the police officer was also admitted into evidence — without objection — and was played for the jury during trial.

On appeal, the defendant argues that the trial court erred by admitting the affidavit because it constituted inadmissible hearsay, and because the danger of unfair prejudice substantially outweighed the affidavit's probative value.

"The trial court has broad discretion to determine the admissibility of evidence, and we will not upset its ruling absent an unsustainable exercise of discretion." State v. Towle, 167 N.H. 315, 320 (2015). "For the defendant to prevail under this standard, he must demonstrate that the trial court's decision was clearly untenable or unreasonable to the prejudice of his case." Id.

We first address the defendant's argument that the affidavit constituted inadmissible hearsay. See N.H. R. Ev. 802. The defendant argues that, because the sexual abuse allegations in the affidavit would not be "relevant if [they] were known to be false," the affidavit was offered to prove the truth of the

---

it is distinguishable. Unlike the defendant in Collins, the defendant here was not sentenced upon both the individual and pattern charges. See Collins, 168 N.H. at 7. Moreover, unlike the defendant in Collins, the defendant in this case does not raise a double jeopardy argument; rather, he relies upon only the mandatory joinder rule that we adopted in Locke. See id.

matter asserted — that he sexually assaulted the victim.  The State counters that the affidavit was not hearsay because it was not offered to prove the truth of the allegations contained therein.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  N.H. R. Ev. 801(c).  "Unless it falls within an exception, hearsay evidence is generally inadmissible."  State v. Lisasuain, 167 N.H. 719, 725 (2015).  If a statement is not offered to prove its truth, but is offered for some other reason, it is not hearsay.  State v. Hayward, 166 N.H. 575, 581 (2014).

The video shows that, during the defendant's interview with the police officer, the officer gave the victim's affidavit to the defendant, allowed him time to read it, and then questioned him.  The video also shows the physical and verbal reactions that the defendant had in response to reading the affidavit.  Moreover, although the police officer and the defendant referenced the affidavit, the specific allegations of sexual abuse contained in it were not described in detail during the interview.

We agree with the trial court that the affidavit was admitted for a non-hearsay purpose, and, therefore, was not hearsay.  The trial court concluded that the affidavit was admitted only to establish "context" for the police interview of the defendant.  To the extent that the word "context" was intended to mean that the affidavit was admitted to show its effect upon the defendant during the interview, we agree.  A statement that is not offered to prove the truth of the matter asserted but to show its effect on the witness is not hearsay.  See United States v. Churn, 800 F.3d 768, 776 (6th Cir. 2015); see also United States v. Robinzine, 80 F.3d 246, 252 (7th Cir. 1996) (explaining that a statement offered only to show the fact that the statement was made and how it affected the witness, and not "the truth-value of what was said," is not hearsay); State v. Launey, 335 So. 2d 435, 437 (La. 1976) ("When writings or utterances are offered to show the effect on the reader, they are generally classified as admissible non-hearsay.").

Thus, for example, in Hayward we concluded that the statements and conduct of a co-participant in a robbery were not hearsay because they were offered not for their truth, but only to show the effect that they had on the defendant.  See Hayward, 166 N.H. at 581.  We explained that:

[T]he defendant did not seek to offer [the co-participant's] threats or violence to prove the truth of any assertions he made; rather, such evidence was offered merely to provide a foundation for the reasonableness of the defendant's fear at the time of the robbery. In short, the point of such evidence was not whether any of [the co-

6

participant's] assertions were "true," but merely that the threats or violence were perceived by the defendant.

Id.

Like the evidence in Hayward, the victim's affidavit in this case was not admitted for the truth of the allegations that it contained; rather, it was presumably offered merely to help the jury assess the defendant's reactions to it during the police interview. We observe that, had the defendant requested a clarifying jury instruction that the affidavit was to be considered only to show its effect on the defendant, he would have been entitled to such an instruction. Although the defendant also argues that the affidavit was not relevant unless its allegations were true, we disagree. Even if the allegations were "known to be false," as the defendant hypothesizes, the affidavit would be relevant to assess his reactions to reading it during the interview.

The defendant further argues that the affidavit was inadmissible under Rule 403 of the New Hampshire Rules of Evidence. According to the defendant, "any non-hearsay, incremental probative value the affidavit had was minimal," while the "danger that the jury would consider the content of the [affidavit] for its truth . . . was high." He also posits that "no [limiting] instruction could adequately mitigate the danger that the jury would consider the affidavit as evidentiary support for the truth of the matters it asserted." We disagree.

Rule 403 states, in pertinent part, that relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." N.H. R. Ev. 403. "Evidence is unfairly prejudicial if its primary purpose or effect is to appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or trigger other mainsprings of human action that may cause a jury to base its decision on something other than the established propositions in the case." State v. Nightingale, 160 N.H. 569, 574 (2010). "Unfair prejudice is not, of course, mere detriment to a defendant from the tendency of the evidence to prove guilt, in which sense all evidence offered by the prosecution is meant to be prejudicial." Id. "Rather, the prejudice required to predicate reversible error is an undue tendency to induce a decision against the defendant on some improper basis, commonly one that is emotionally charged." Id. "Among the factors we consider in weighing the evidence are: (1) whether the evidence would have a great emotional impact upon a jury; (2) its potential for appealing to a juror's sense of resentment or outrage; and (3) the extent to which the issue upon which it is offered is established by other evidence, stipulation or inference." Id. at 574-75.

The trial court is in the best position to gauge the prejudicial impact of particular testimony, and what steps, if any, are necessary to remedy that prejudice. Id. at 575. Thus, we give the trial court broad latitude when ruling

upon the admissibility of potentially unfairly prejudicial evidence, and we will not disturb its decision absent an unsustainable exercise of discretion. Id.

To perform the balancing required by Rule 403, we first consider the probative value of the affidavit. See State v. Wells, 166 N.H. 73, 80 (2014). The affidavit's probative value derives from the fact that, as explained above, it presumably aided the jury in understanding the defendant's reactions to it during the police interview. See People v. Ransom, 746 N.E.2d 1262, 1269 (Ill. App. Ct. 2001) (concluding that evidence of victim's reaction to viewing the defendant's photograph was "highly probative" of the identity of her attacker).

We next consider whether the danger of unfair prejudice to the defendant from the admission of the affidavit substantially outweighed its probative value. See Wells, 166 N.H. at 80. Here, the prejudicial impact of the victim's affidavit was, at best, minimal.

First, there was only a minimal risk that the affidavit would induce the jury to decide against the defendant upon an improper or emotionally charged basis. This is because the victim's testimony at trial mirrored the allegations of sexual abuse in the affidavit. For instance, the victim alleged in the affidavit, just as she did in her testimony at trial, that, when she visited the defendant before she turned 13 years old, the defendant forced her to view pornography with him and made her engage in numerous sexual acts — which she described in graphic detail. Accordingly, we cannot say that the affidavit was likely to have any greater emotional impact upon the jury than the victim's testimony at trial concerning the same allegations. See id. at 80-81.

Moreover, any possible prejudice from the allegations in the affidavit being improperly considered for their truth was effectively cured by the two limiting instructions that the trial court provided, which the jury is presumed to have followed. See State v. Costello, 159 N.H. 113, 123 (2009). The trial court twice told the jury that it was not to consider the affidavit's allegations for their truth. See State v. Willis, 165 N.H. 206, 225 (2013) (concluding that trial court's "prompt and thorough instructions" to jury that it was not to consider statements for their truth cured any possible danger of unfair prejudice from their admission). Accordingly, given the affidavit's probative value and its minimal prejudice, we conclude that the trial court did not err in admitting the affidavit under Rule 403.

In sum, because the affidavit did not constitute hearsay, and because its probative value was not substantially outweighed by the danger of unfair prejudice, we conclude that the trial court did not unsustainably exercise its discretion by determining that the affidavit was admissible. To the extent that the defendant further asserts that the admission of the affidavit violated his rights under the Federal Confrontation Clause, see U.S. CONST. amends. VI, XIV, we conclude that this argument is insufficiently developed for our review.

See State v. Blackmer, 149 N.H. 47, 49 (2003) (noting that a mere laundry list of complaints regarding adverse rulings by the trial court, without developed legal argument, is insufficient to warrant review).  Finally, any issues raised in the defendant's notice of appeal that he has not briefed are deemed waived. See id.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.